STEPHEN F. KRANTZ, APPELLANT, v. MARGE'S MUFFLERS, INC., APPELLEE.

172 N. W. 2d 624

Filed December 5, 1969. No. 37214.

Young, Holm, McEachen & Hamann, for appellant.

Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

This is an action by Stephen F. Krantz to recover damages for personal injuries sustained by him in an accident at the defendant's automobile repair shop in Omaha, Nebraska.

On January 4, 1965, the plaintiff, who is a used car dealer, brought an automobile to the defendant's shop to have its exhaust system repaired. The automobile was placed on a lift or hoist and raised so that the exhaust system could be inspected. Later, while the automobile was being lowered the plaintiff's foot was caught underneath the hoist and injured.

The jury returned a verdict for the defendant. The plaintiff's motion for new trial was overruled and he has appealed. The assignments of error relate to the overruling of the plaintiff's motions for a directed verdict, the instructions to the jury, and rulings on objections during the plaintiff's cross-examination of the defendant's employee.

The work area of the defendant's shop contained four hoists arranged in two rows so that automobiles could enter from the north and south sides of the building and be placed on the hoists. Each hoist consisted of a platform supported by four posts located at the corners. The platform was raised and lowered by a winch and cable system operated by an electric motor. It required 48 seconds for the hoist to be lowered. There was an aisle 6½ feet wide between the hoists on the north and south sides of the shop. When the platform was lowered, a bar or cross-member at the front of the hoist rested on the concrete floor of the shop.

The plaintiff was familiar with the defendant's shop and the way cars were lifted. On the day of the accident the plaintiff's automobile entered the shop from the south and was placed on a hoist. The plaintiff then went into the office or waiting room while the automobile was inspected to determine what repairs were needed.

Terry Hinze, an employee of the defendant, testified

that he examined the muffler, exhaust pipe, and tail-pipe on the automobile and found no defects in them. Hinze then asked the plaintiff to come to the shop area, and the plaintiff and Hinze went underneath the automobile and inspected it. Hinze climbed up on the hoist, started the engine, and had another employee plug up the tailpipe. This procedure disclosed that the defect was in the center head or intake manifold area.

Hinze climbed down from the hoist and told the plaintiff that the defect was in the engine area and not in the exhaust system. Hinze said that if the plaintiff would step out from underneath the car, he would lower the hoist and the plaintiff could see where the defect was located.

The switch which controlled the hoist was located at the northwest corner of the hoist near the left front corner of the automobile. Hinze testified that the plaintiff was clear of the hoist before he began to lower the automobile. The plaintiff was standing north of or in front of the hoist and to the left of Hinze as the automobile was being lowered. Hinze was watching the hoist as the automobile was being lowered and the plaintiff was not in the vision of Hinze. There was some evidence that the plaintiff was looking at the engine when the hoist came down on his right foot.

The plaintiff testified that the engine had been started with the car on the hoist before he was asked to come to the shop area to see where the defect was located. The plaintiff said that he was underneath the hoist looking at the automobile when he felt the hoist coming down. The plaintiff was backing out from under the hoist and had "almost made it" when he felt himself lunging backwards, caught hold of the top of the radiator of the car, and pulled himself back. The plaintiff said that he straightened himself out, but as the hoist went on down, "my foot was just in the wrong place" and the bar caught his foot. The plaintiff's right big toe and part of the second toe were crushed in the accident.

The evidence was in conflict as to how the accident happened and presented questions for the jury as to negligence and contributory negligence. The plaintiff's motions for a directed verdict were properly overruled.

The plaintiff contends that the trial court erred in failing to give two requested instructions concerning the duty of the operator of a car lift. The first requested instruction stated that it is the duty of the operator of a car lift to keep a proper lookout and to see what is plainly before him. The second requested instruction stated that a car lift is a dangerous instrumentality and that a slight deviation from the standards of care will constitute negligence.

The trial court instructed generally with respect to negligence and contributory negligence but gave no specific instruction as to the duty of lookout with respect to either party. However, the trial court did instruct that the defendant was required "to exercise that degree of care, precaution and vigilance in its actions and operations on the premises which the circumstances justified and reasonably demanded." The trial court further instructed that the defendant was not required to "warn of an open and obvious danger" and the plaintiff was "not entitled to anticipate that he would be warned of a risk that should have been open or obvious to him in the exercise of ordinary care."

The duty to maintain a proper lookout was a part of the duty to use due care and was applicable to both parties. It was not limited to the defendant alone as suggested in the first requested instruction. Under the circumstances in this case the trial court was not required to give the requested instruction.

Although a car lift might be considered to be a dangerous instrumentality in one sense of the term, the duty upon the defendant was to exercise reasonable care under the circumstances while operating the lift. The trial court was not required to instruct the jury that even a "slight deviation from the standards of

care" would constitute negligence. It is not error to refuse a requested instruction if the legal principles therein announced are either incorrectly stated or inapplicable to the issues involved. Frazier v. Anderson, 143 Neb. 905, 11 N. W. 2d 764.

The plaintiff contends that the trial court should have instructed the jury in regard to the doctrine of sudden emergency even though such an instruction was not requested. The doctrine is not applicable where, as in this case, the emergency is caused in part by the negligence of the party claiming its benefit. Schwartz v Hibdon, 174 Neb. 129, 116 N. W. 2d 187.

During the cross-examination of Hinze, plaintiff's counsel inquired at length concerning a pre-trial deposition. As to many of the questions asked there was no variance between the testimony at the trial and the testimony in the deposition. On two occasions the trial court sustained objections to the questions asked because the previous answers did not tend to impeach the witness.

The plaintiff now complains that he was prevented from proving that the witness had stated, in his deposition, that he asked the plaintiff to come to the shop area to observe the source of the noise. Hinze had testified on direct examination that he asked the plaintiff to come to the shop area "and we went underneath the car."

There was no prejudice in the ruling. Although the objection was sustained, no motion was made to strike the testimony and no admonition was given to the jury. There was an offer of proof but no ruling made. The cross-examination continued and the plaintiff's counsel made further inquiry concerning the pre-trial deposition.

Although a witness may be impeached by proof of previous inconsistent statements, counsel should not be permitted to read at length from pre-trial depositions during cross-examination where there is no substantial variance in the testimony. The trial court in this case

did not abuse its discretion in attempting to keep the cross-examination within proper bounds.

The judgment of the district court is affirmed.

AFFIRMED.