200 N.W.2d 23 (1972)
189 Neb. 83
NEBRASKA PANHANDLE COMMUNITY ACTION AGENCY, INC., Appellee,
v.
Martin Douglas STRANGE, Appellant.
NEBRASKA PANHANDLE COMMUNITY ACTION AGENCY, INC., Appellee,
v.
Sidney Grant CURTRIGHT, Appellant.
NEBRASKA PANHANDLE COMMUNITY ACTION AGENCY, INC., Appellee,
v.
Ramon J. PEREZ, Appellant.
Nos. 38408-38410.
Supreme Court of Nebraska.
August 4, 1972.
*24 Atkins, Ferguson, Nichols & Hahn, Scottsbluff, for appellants.
Lovell, Raymond & Hippe, Scottsbluff, for appellee.
Heard before WHITE, C. J., and BOSLAUGH, SMITH, McCOWN and NEWTON, JJ.
SMITH, Justice.
The district court on plaintiff's petition adjudged that plaintiff had terminated employment of defendants. It also dismissed the claim of each defendant for reinstatement and recovery of damages. Defendants appeal.
Contentions are: (1) Plaintiff breached its contract to employ defendant Perez; and (2) the resolutions of the board of directors of plaintiff discharging defendants Curtright and Strange were also void for insufficiency of number of directors, conflict of interest of a voting director, lack of notification of meetings, lack of a quorum, and violation of the Economic Opportunity Act of 1964, as amended. No defendant asserts a violation of a constitutional right, a statutory civil right, or a right of a poor person to employment by plaintiff under the Act.
Plaintiff was organized as a nonstock nonprofit corporation under sections 21-1901 to 21-1991, R.R.S.1943, which conformed to the A.B.A. Model Nonprofit Corporation Act (1964). Its principal purpose was to administer programs under the Economic Opportunity Act of 1964, including subsequent amendments.
Resolutions of the board of directors in March 1971 terminated the employment of defendant Curtright as director of health and nutrition and of Perez as general manager. In April the acting general manager terminated the employment of defendant Strange as planner-trainer. Curtright and Strange had been employed under oral agreements terminable at will. Plaintiff had employed Perez in a written agreement *25 for a term of 1 year from November 30, 1970. Under the agreement his employment would terminate should his performance not be to the satisfaction of the board of directors, which was to be the sole judge.
If a condition of an obligor's duty is that he be satisfied with the obligee's performance, an interpretation is preferred under which the condition occurs, provided a reasonable man in the position of the obligor would be satisfied and such a test is practicable. If the agreement leaves no doubt that honest satisfaction and no more is meant, the condition does not occur if the obligor is honestly, even though unreasonably, dissatisfied. The mere statement of the obligor that he is not satisfied is not conclusive. Restatement 2d, Contracts, Tent.Dr. 7, § 254 (1972); cf. Thurman v. City of Omaha, 64 Neb. 490, 90 N.W. 253 (1902); quaere: Melson v. Turner, 125 Neb. 603, 251 N.W. 172 (1933).
A condition of plaintiff's duty plainly was honest satisfaction and no more. Such a question ordinarily is one of fact. See Melson v. Turner, supra. The district court found against Perez. The finding was correct. For reasons to be given, the resolution terminating the employment of Perez is not vulnerable to his attack.
In 1970 the Economic Opportunity Act of 1964, as amended, declared these purposes: (1) The strengthening of community capabilities to eliminate poverty; (2) the better organization of services; (3) the greater use, subject to adequate evaluation, of new types of services and innovative approaches in attacking causes of poverty; (4) the maximum feasible participation of the poor; and (5) the enlisting of services from other groups. See 42 U.S.C. § 2701 (1970).
Plaintiff was a community action agency within the definition of the Act which provided as follows: A board consisting of not more than 51 members was to govern the agency. One-third were to be public officials, and not more than one-third were to be members of major groups in the community. Democratic selection procedures were designed to assure that they would be representatives of the poor in the area to be served. The board was to possess power to appoint persons to senior staff positions and to determine major personnel, fiscal, and program policies. Congress directed it to establish specific standards to assure that employees would be promoted under impartial procedures calculated to improve agency performance and effectiveness. Congress also declared a policy of resident employment. See, 42 U.S.C. §§ 2781, 2790, 2791(b), (e), and (f) (1), (2), and (3), 2795(b) (4), 2796(a), and 2810 (1970).
Congress required the Director of the Office of Economic Opportunity to prescribe rules for (1) schedule and notification of meetings, (2) quorums that were to be not less than 50 percent of the total membership, (3) representative groups of the poor to petition for adequate representation, and (4) simplified requirements for small agencies in rural areas. See 42 U.S.C. §§ 2791(d) and 2796(b) (1970).
Regulations promulgated by the Director established procedures for hearing of grievances and for withdrawal of assistance. See 45 C.F.R. §§ 1060.1 to 1067.1-11 (Jan. 1, 1971).
Plaintiff and similar community action agencies were new entities. They differed from other kinds of corporations, for they possessed attributes of political subdivisions. Some authors have predicted that future generations would consider these agencies precursors of the restructuring of local government. The agencies have been analyzed, approved, and criticized. See, Everett, "Foreword," 31 Law & Contemp. Prob. 1 (1966); Faux, "Politics and Bureaucracy in Community-Controlled Economic Development," 46 Law & Contemp. Prob. 277 (1971); Ginsbury and Shiffman, "Manpower and Training Problems in Combating Poverty," 31 Law & Contemp. Prob. 159 (1966); Kotler, "The Politics *26 of Community Economic Development," 36 Law & Contemp.Prob. 3 (1971); Leach, "The Federal Role in the War on Poverty Program," 31 Law & Contemp.Prob. 18 (1966); March, "Coordination of the War on Poverty," 31 Law & Contemp.Prob. 114 (1966); Oxendine and Puryear, "Profit Motivation and Management Assistance in Community Economic Development," 36 Law & Contemp.Prob. 136 (1971); Perry, "National Policy and the Community Development Corporation," 36 Law & Contemp.Prob. 297 (1971); Sanford, "Poverty's Challenge to the States," 31 Law & Contemp.Prob. 77 (1966); Sturdivant, "Community Economic Development," 36 Law & Contemp.Prob. 35 (1971); Note, 83 Harv.L.Rev. 1558 (1970); Note, 75 Yale L.J. 599 (1966).
The hybrid nature of plaintiff cautions us against a mechanical application of common law applicable to another kind of corporation. Cf. Oleck, "Non-Profit Types, Uses, and Abuses: 1970", 19 Clev.St.L.Rev. 207 (1970). No statutory provision or administrative regulation indicates to us that defendants were beneficiaries entitled to tenure without contract. Provisions relating to structure and operation of plaintiff attempted to prevent discrimination against the poor. Congress balanced interest in innovation and local control against costs of loose structure. If plaintiff violated the provisions, the violations afforded defendants no remedy. Under the particular facts, the statutes, and the regulations, we will not review the validity of the resolutions of the board of directors of plaintiff.
The judgments are affirmed.
Affirmed.
SPENCER, J., participating on briefs.