ARTEX, INC., A CORPORATION, APPELLANT AND CROSS-APPELLEE, V. OMAHA EDIBLE OILS, INC., A CORPORATION, APPELLEE AND CROSS-APPELLANT.

436 N.W.2d 146

Filed February 24, 1989.   No. 87-238.

Thomas Blount for appellant.

William Jay Riley and Glenda J. Pierce, of Fitzgerald & Brown, for appellee.

HASTINGS, C.J., GRANT, and FAHRNBRUCH, JJ., and HENDRIX and OLBERDING, D. JJ.

HASTINGS, C.J.

This is a breach of contract action in which the plaintiff has appealed from an order of the district court which directed a verdict in favor of the defendant. Defendant cross-appeals from an order of the court directing a verdict in favor of the plaintiff on defendant's counterclaim. Plaintiff assigns as error generally the granting of defendant's motion for a directed verdict, and specifically the determination by the trial court that under the subject contract the defendant had an absolute right to arbitrarily reject any contract negotiated on behalf of the defendant by the plaintiff. Defendant had counterclaimed for the return of its deposit paid at the beginning of negotiations, and has here cross-appealed from the trial court's adverse ruling on that counterclaim. We affirm as to plaintiff's appeal and reverse as to defendant's cross-appeal.

Defendant, Omaha Edible Oils, Inc. (OEO), buys trimmed fat from the packing industry, reduces the fat to oil, then ships the oil to companies that further refine it. OEO primarily ships the oil by rail to five different destinations. Plaintiff, Artex, Inc., is a transportation consultant.

In April of 1985, Robert Gillespie from Artex spoke with Kenneth Krzycki from OEO about the possibility of Artex' doing some work for OEO to reduce the rail rates OEO pays. During the initial meeting between the two, the subject of compensation was also discussed. Gillespie told Krzycki that Artex could be paid in one of two ways: either on an hourly basis or on a percentage of the savings achieved. Krzycki told Gillespie that he was not interested in the hourly basis method of compensation.

On June 26, 1985, Artex sent a letter to James Kruger, the president of OEO. The letter proposed that Artex negotiate on OEO's behalf reduced rates with Union Pacific (UP) and negotiate a contract which would include specific provisions to improve the service provided by UP. In exchange for its services, Artex would receive $500 forthwith and one-third of the savings achieved in the first year after any reduced rates became effective. The initial $500 would be refunded if the savings for the first year did not exceed $500. Artex promised it "would negotiate based on service and rates and [OEO] would have the final say on all work done in [its] behalf." In addition, Artex offered to provide rail rate quotes to OEO at no cost and to arrange for an outside audit of OEO's freight bills for the last 3 years. Any refunds OEO obtained as a result of the audit would be split on a 50-50 basis.

On June 27, 1985, OEO accepted Artex' offer and sent Artex a $500 check.

During July and August of 1985, Artex negotiated with UP and reached an agreement with UP which allegedly would have resulted in a savings of $18,200 per year for OEO. Thereafter, Gillespie of Artex met with Krzycki to report the results. Upon being advised of the deal, Krzycki told Gillespie to negotiate with other railroads to see what kind of numbers he could come up with.

Gillespie made contract proposals on OEO's behalf to four other railroads. Artex alleges that by November 22, 1985, it had obtained firm commitments to enter into rail transportation contracts with OEO which would have resulted in annual savings of $104,260.

On November 26, 1985, Gillespie met with Krzycki to discuss

the proposals. According to Gillespie, Krzycki told him he could not enter into the contracts at that time because OEO was considering selling its product to ConAgra in Omaha. According to Krzycki, he rejected the proposals because they were not what he wanted. In any event, there is no question but that no contract proposal was ever accepted by OEO, and OEO never used any rates negotiated by Artex.

On February 19, 1986, Artex sent OEO a letter demanding payment in the amount of $34,405.80, one-third of the amount of savings Artex alleged OEO would have achieved had it entered into the contracts. OEO refused to pay, and Artex brought this action. As previously mentioned, OEO counterclaimed for a refund of the $500 initially paid to Artex.

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Sundeen v. Lehenbauer*, 229 Neb. 727, 428 N.W.2d 629 (1988).

The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988).

The lone issue necessary to be resolved in this appeal is whether the contract between Artex and OEO contained a satisfaction clause. If there was no satisfaction clause, OEO had an absolute right to reject any proposals made by Artex and the trial court would be right in directing a verdict. If there was a satisfaction clause, there very probably would have been a question of fact as to whether OEO was "honestly dissatisfied" with Artex' proposals, and the trial court would then have been in error in sustaining the motion for a directed verdict.

Artex' basic argument is that the contract does contain a satisfaction clause, and OEO breached the contract when it refused to enter into the contracts Artex had negotiated without honestly being dissatisfied with them. According to Artex, the following language in the June 26, 1985, letter to Kruger constitutes a satisfaction clause:

Once again, we would negotiate based on service and rates and you would have the final say on all work done in your behalf. We believe we can offer significant savings to your company and at the same time address the service problems you have had in the past.

At trial, the testimony of Gillespie was the only evidence Artex introduced to prove that the foregoing language was meant to be a satisfaction clause. Gillespie testified that during his April meeting with Krzycki, they discussed the compensation Artex would receive for its services. It was Gillespie's understanding that if Artex negotiated rates without any degradation in service, OEO would enter into the contracts.

Gillespie, however, drafted the June 26, 1985, letter to Kruger which contained the language "you would have the final say on all work done in your behalf." He testified that such language was based upon the conversation he had with Krzycki in April. He never discussed what he meant by that provision with Kruger or Krzycki.

At trial, Kruger, the recipient of Artex' letter, testified as to his understanding of what the language at issue meant. As he understood it, OEO had the final say. Although Kruger spoke in terms of "approval" and "satisfaction," the gist of his statement was that he felt he had the final say whether he would accept the contracts.

Artex cites the following cases for propositions of law relating to satisfaction clauses: *Thurman v. City of Omaha*, 64 Neb. 490, 491, 90 N.W. 253 (1902) (" 'subject to our attorney's opinion as to the legality of the issue' "); *Melson v. Turner*, 125 Neb. 603, 604, 251 N.W. 172 (1933) (" 'which well is hereby guaranteed to furnish an inexhaustible supply of water, which shall be of quality that is satisfactory to said Turner' "); *Nebraska Panhandle Community Action Agency, Inc. v. Strange*, 189 Neb. 83, 84, 200 N.W.2d 23, 25 (1972) ("his employment would terminate should his performance not be to the satisfaction of the board of directors, which was to be the sole judge"); and *K & K Pharmacy v. Barta*, 222 Neb. 215, 216, 382 N.W.2d 363, 364 (1986) (" '[i]n the event Buyer is unable to obtain a new lease satisfactory to Buyer, this Agreement shall be null and void' "). These cases are all distinguishable from the

case at bar for the reason that the contract at issue in each of these cases, unlike the contract at issue in this case, expressly conditioned acceptance of the subject matter of the contract upon the satisfaction or approval of the obligor.

The contract at issue in the present case specifies that OEO shall have the final say on the contracts negotiated by Artex. The contract says nothing about OEO's acceptance being conditioned on its satisfaction or approval of such contracts. Artex fails to provide evidence that the contract does indeed contain a satisfaction clause as claimed.

Artex never asserted that the contract language in question is ambiguous. Ambiguity might appear to exist in the language, given the fact that Artex claims that the disputed language does constitute a satisfaction clause and OEO claims it means OEO had the final say whether it would enter into the contracts. However, this court has said that the fact that the parties urge opposing interpretations does not necessarily mean that the contract is ambiguous. *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988); *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988); *Lueder Constr. Co. v. Lincoln Electric Sys.*, 228 Neb. 707, 424 N.W.2d 126 (1988).

There is a strong presumption that a written instrument correctly expresses the intention of the parties to it. *Bedrosky, supra*; *J. J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988). Parties are bound by the terms of the contract even though their intent may have been different from that expressed in the agreement. *Bedrosky, supra*; *Rumbaugh v. Rumbaugh*, 229 Neb. 652, 428 N.W.2d 500 (1988).

Words used in a contract must be given their plain and ordinary meaning, as ordinary, average, or reasonable persons would understand them. *Bedrosky, supra*; *Rumbaugh, supra*. Read in its clearest and most plain sense, the letter that became the contract between Artex and OEO provided that OEO would have the final say on all work done on its behalf. Read in this manner—that is, taking the language of the contract in its plain and ordinary meaning—the contract placed no condition of satisfaction upon OEO's decision whether to accept contracts negotiated by Artex.

This reading of the disputed language is supported by the fact that the contract between Artex and OEO was not an exclusive contract. At trial, Gillespie admitted that nothing in the contract provided that OEO would only use Artex' services in negotiating rates and railroad contracts. It would be inconsistent to say that OEO could otherwise go out and enter into contracts with the same railroads Artex would be negotiating with on OEO's behalf, yet claim OEO was obligated to enter into whatever contracts Artex negotiated unless OEO was honestly, in fact, dissatisfied with the product of Artex' efforts.

A written contract which is expressed in clear and unambiguous language is not subject to interpretation or construction. *Bedrosky, supra*; *Fisbeck, supra*; *Lueder Constr., supra*. The meaning of an unambiguous contract presents questions of law. *Lueder Constr., supra*; *Washington Heights Co. v. Frazier*, 226 Neb. 127, 409 N.W.2d 612 (1987). The trial court, therefore, did not err in finding that OEO had an absolute right to arbitrarily refuse to enter into the contracts Artex negotiated.

Even if Artex would have argued that the contract is ambiguous and, therefore, subject to interpretation, it would be to no avail. The construction of a contract, if needed, is a question of law for the court. *Niedbalski v. Board of Ed. of Sch. Dist. No. 24*, 227 Neb. 516, 418 N.W.2d 565 (1988); *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). In construing a contract, the court will apply the general rule that when there is a question as to the meaning of the language of a contract, the contract will be construed against the party preparing it. *Gard v. Pelican Publishing Co.*, 230 Neb. 656, 433 N.W.2d 175 (1988); *Kreikemeier v. McIntosh*, 223 Neb. 551, 391 N.W.2d 563 (1986); *Schmidt v. J. C. Robinson Seed Co.*, 220 Neb. 344, 370 N.W.2d 103 (1985). If the language in a contract drafted by one of the parties is susceptible to more than one meaning, it should be given a construction which the other party would be fairly justified in giving it. *Gard, supra*; *Bishop Buffets, Inc. v. Westroads, Inc.*, 202 Neb. 171, 274 N.W.2d 530 (1979). If the disputed language were ambiguous and, thus, in need of

interpretation, construing it against Artex, the drafter, and giving it a construction OEO would be fairly justified in giving it, the language means OEO would only have to enter into the contracts Artex negotiated if it, OEO, wanted to.

The errors assigned by Artex are without merit, and judgment on plaintiff's claim is affirmed.

As to OEO's cross-appeal, to put it in the vernacular, "a deal's a deal," and Artex, having agreed to refund the $500 if savings for the first year did not exceed $500, is obligated to refund that amount, because OEO realized no savings at all. The judgment as to OEO's counterclaim is reversed, and the cause is remanded with directions to the district court to enter judgment accordingly.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.