FIRST NATIONAL BANK IN MITCHELL, A NATIONAL BANKING
CORPORATION, APPELLANT, V. PATRICIA A. KURTZ, ARTHUR
GILBERT KURTZ, AND CYNTHIA ANN BROWN, COPERSONAL
REPRESENTATIVES OF THE ESTATE OF ARTHUR H. KURTZ,
DECEASED, ET AL., APPELLEES.
440 N.W.2d 432

Filed May 26, 1989.   No. 87-196.

John A. Selzer, of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellant.

James R. Hancock, of Hancock & Denton, P.C., for appellees Arthur Kurtz and Brown.

Dennis M. Coll for appellee Patricia Kurtz.

Robert M. Harris, of Harris & Lippstreu, for appellee Burkman.

HASTINGS, C.J., WHITE, and CAPORALE, JJ., and REAGAN, D.J., and COLWELL, D.J., Retired.

REAGAN, D.J.
This is an action for conversion of property brought by appellant, First National Bank in Mitchell (Bank), against the appellees. From an order granting the appellees' motion for a directed verdict at the close of appellant's evidence and a subsequent order denying a motion for new trial, the Bank has brought this appeal.

Under the posture of the case, the Bank is entitled to have all factual issues, together with legitimate inferences and conclusions, resolved in its favor. *Henderson v. Forman*, 231 Neb. 440, 436 N.W.2d 526 (1989); *Artex, Inc. v. Omaha Edible Oils, Inc.*, 231 Neb. 281, 436 N.W.2d 146 (1989); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). With that rule in mind, we now set forth the factual background disclosed by the record.

For a number of years prior to 1983, Jerry and Laurie Kurtz borrowed money from the Bank to finance their farming operation. They farmed land in "Sections 5/22/56 and 14/22/56," which was commonly referred to as the Hettinger property. Jerry's father, Arthur Gilbert Kurtz, farmed land owned by Jerry's grandfather, Arthur H. Kurtz. In the fall of 1983, to secure existing indebtedness to the Bank of approximately $300,000, Jerry and Laurie Kurtz signed and delivered to the Bank a security agreement. The agreement granted a security interest in all owned or later acquired "farm products or inventory, including but not limited to all livestock, crops, grain, hay, seed, feed, fertilizer, supplies, and products of crops and of livestock . . . ."

The agreement further provided in printed language: "The above described crops are growing or will be grown on the following described real estate." And in typewritten language: "Sections 5/22/56 and 14/22/56 in Scotts Bluff County, NE."

The property which is the subject matter of this action is livestock feed from crops grown on land other than as described in the above document.

Although not relevant to the disposition of this case, at approximately the same time, the Bank took written guaranties from Jerry's parents for $15,000 and from Laurie's parents for $35,000. The consideration for the guaranties was a matter of dispute, the Kurtzes claiming it was to allow the Bank to consider further loans to support the 1984 farming operation, and the Bank contending it was to allow Jerry the continued use of his farm machinery, which was then subject to repossession under a prior security agreement.

In late fall of 1983, Jerry's father decided to retire from farming. Jerry and his grandfather, Arthur H. Kurtz, then

entered into an agreement where Jerry would farm his grandfather's property in 1984. The terms of the agreement were outlined by Jerry's testimony as follows: Jerry would farm the property and make efforts to finance his operation by borrowing the money; if he was able to borrow the money, which he felt he would be able to do, he would pay his grandfather cash rent of $115 per acre for 185 acres of land; if the efforts at financing were unsuccessful, he was to keep track of all of his expenses, and his grandfather would pay him for his work on a "custom farming" basis. The agreement was incomplete in that there were no terms reached with respect to the amount of payment for work as a custom farmer or the expenses that he was to be reimbursed for in the event his efforts at financing were unsuccessful.

Jerry testified as to his efforts to finance the 1984 farming operation, which commenced as early as the spring of 1983 and continued until April of 1985. The efforts were unsuccessful. As the 1984 farm year developed, Jerry's grandfather advanced the money necessary to purchase seed and fertilizer. The crops grown by Jerry on his grandfather's land, when harvested for feed, produced 456 tons of earlage, 2,325 tons of silage, and 322 tons of haylage. Jerry's grandfather died on January 2, 1985, and at the time of his death, all of this feed was located on his farm.

In January of 1985, while they were still attempting to obtain financing for the 1984 crop season, Jerry and Laurie Kurtz executed and delivered to Jerry's mother, Patricia Kurtz, a bill of sale covering the feed that had been raised on his grandfather's land. The evidence is undisputed that the purpose of executing and delivering this bill of sale was an effort to secure the liability on the part of Jerry's mother for the guaranty signed in May of 1983. Following the execution and delivery of the bill of sale from Jerry and Laurie to Patricia Kurtz, the estate of Arthur H. Kurtz made a demand upon Jerry for the cash rent pursuant to the agreement with his grandfather. The initial inventory filed by the estate also claimed this cash rent as an asset.

In April of 1985, after Jerry's efforts at financing were unsuccessful, arrangements were made by the personal

representatives of the estate of Arthur H. Kurtz to sell all of this feed to Dick Burkman. The sale was consummated, and delivery took place in the summer of 1985. The estate received the sum of $41,499.10, and $49,932.26 was paid to Patricia Kurtz. Testimony established that this division of the sale price was a compromise of reciprocal claims between the estate and Jerry Kurtz—the estate's claim for cash rent and Jerry's claim for custom farming his grandfather's land. The amount received by the estate was exactly the total of the amount advanced by Jerry's grandfather for seed and fertilizer, the amount advanced by the estate for delivery expenses, and the amount the grandfather would have received for cash rent had Jerry obtained financing.

In October of 1985, Jerry and Laurie filed for bankruptcy. Upon receipt of a copy of the bankruptcy petition, the Bank was made aware that Jerry and Laurie had transferred their interest in the feed to Patricia Kurtz by bill of sale in January 1985. Demand was made upon Patricia Kurtz for the return of the feed on January 16, a replevin hearing was subsequently filed, and on February 28, demand was made upon Dick Burkman for the return of the feed. Upon learning the demand could not be honored, this action for conversion was filed.

The Bank assigns as errors the (1) sustaining of the motions for directed verdict; (2) determination that there was insufficient evidence for the jury to find that Jerry Kurtz owned the feed and that the Bank had a security interest in it; (3) refusal to admit into evidence a bankruptcy petition and schedule filed by Jerry and Laurie Kurtz; (4) refusal to admit into evidence a copy of a proposed settlement agreement between Jerry Kurtz and the estate of Arthur H. Kurtz; and (5) admission into evidence of the amended inventory for the estate of Arthur H. Kurtz.

We treat these assignments of error in reverse order. In the Bank's case, as before mentioned, the estate inventory was introduced in evidence (but only as an admission against the estate of Arthur H. Kurtz), showing cash rent due for 1984 from Jerry Kurtz as an asset of the estate. On cross-examination of one of the copersonal representatives, an amended inventory was marked and received in evidence over

the Bank's objection. It showed the subject feed as an asset of the estate and a contingent liability to Jerry Kurtz for custom farming during 1984. The amended inventory is admissible under Neb. Evid. R. 106, which provides in part as follows:

(1) When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other. . . . When a detached act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence.

Neb. Rev. Stat. § 27-106 (Reissue 1985). We recognize the amended inventory was completed and filed subsequent to the institution of this lawsuit, but that affects only its probative value, not its admissibility.

The Bank contends in its fourth assignment of error that the trial court erred by refusing to admit into evidence a copy of a proposed settlement agreement between Jerry Kurtz and the estate of Arthur H. Kurtz prepared in April of 1985. The proposed settlement agreement related to the claim of Jerry Kurtz for the value of his services as a custom farmer. The exhibit was first offered generally and, later in the trial, offered specifically for the limited purpose of impeaching testimony of Jerry Kurtz. The general offer was refused by the trial judge for the reason it was evidence of an offer to compromise a claim. Neb. Rev. Stat. § 27-408 (Reissue 1985). When refusing the limited offer, the trial judge indicated that the exhibit was surplusage of a previous exhibit, which had been offered and received. Evidence, although relevant, may be excluded if it is cumulative. Neb. Rev. Stat. § 27-403 (Reissue 1985). We have also stated, and adhere to, the rule that an abuse of discretion must be shown to sustain an assignment of error directed at the exclusion or admission of evidence. *Blanchette v. Keith Cty. Bank & Trust Co.*, 231 Neb. 628, 437 N.W.2d 488 (1989); *Turner v. Welliver*, 226 Neb. 275, 411 N.W.2d 298 (1987). The rulings of the trial court are correct and fail to show any abuse of discretion, and the assignment of error fails.

The third assignment of error deals with the trial court's refusal to admit into evidence a bankruptcy petition and

schedule filed by Jerry and Laurie Kurtz in October of 1985. The court ruled that the bankruptcy petition was hearsay and refused to receive it into evidence. Jerry and Laurie Kurtz were not parties to this action, and the court's ruling that the matter was hearsay is correct. Neb. Rev. Stat. § 27-801 (Reissue 1985). Following this offer, Jerry Kurtz further testified that he made no claim to be the owner of the feed in question beyond the spring of 1985. The bankruptcy petition and schedule were then reoffered to impeach his testimony. The schedule recites that Jerry and Laurie had transferred *an interest in the feed* to Patricia Kurtz by a bill of sale in January of 1985. Jerry had testified he transferred his interest in the feed by this bill of sale. In determining whether subsequent evidence or testimony constitutes impeachment, a trial judge has the discretion to determine whether the testimony is inconsistent, and, absent an abuse of that discretion, the ruling will be upheld on appeal. See, *State v. Marco*, 220 Neb. 96, 368 N.W.2d 470 (1985); *Krantz v. Marge's Mufflers, Inc.*, 184 Neb. 838, 172 N.W.2d 624 (1969). The bankruptcy schedule dealt with transfer of interests rather than a claim of ownership, and the ruling of the trial court that it did not impeach the prior testimony is neither incorrect nor does it constitute an abuse of discretion.

We treat assignments of error (1) and (2) together. It is incumbent upon the plaintiff, in an action for conversion, to establish a general or special ownership in certain property. 89 C.J.S. *Trover & Conversion* §§ 1 et seq. (1955). The Bank established a security interest in the property (described in the financing statement) that was *owned* by Jerry and Laurie Kurtz. Whether they owned this feed was a collateral issue, necessary to establish the element of conversion set forth above, and it depended entirely upon Jerry's status with his grandfather—if Jerry was a cash rent tenant, then he was the owner of the crops produced on the land; but if he was custom farming, his grandfather retained all ownership rights to the crops produced.

The trial judge correctly concluded that the contract between Jerry and his grandfather was a conditional one that related to financing. Whether it was a subsequent condition (a contract of cash rent that was dependent upon Jerry's obtaining financing

at a later time) or a precedent condition (one to custom farm, but to be converted to a cash rent if financing was obtained), *Donaldson v. Farm Bureau Life Ins. Co., ante* p. 140, 440 N.W.2d 187 (1989), and *Schmidt v. J. C. Robinson Seed Co.,* 220 Neb. 344, 370 N.W.2d 103 (1985), is immaterial because the evidence clearly established as a matter of law that Jerry attempted to obtain financing from the spring of 1983 through the spring of 1985 and that he was unable to do so. The condition of the contract, whether precedent or subsequent, not being met, Jerry was relegated to the status of custom farming, and whatever interest he had in the feed was defeated.

Even if the Bank was arguing that the terms of the contract are ambiguous and Jerry's status as a tenant subject to interpretation, a proposition with which we do not agree, it would furnish the Bank no basis for relief. We have recently pointed out that the construction of a contract is a matter for the court to determine. *International Harvester Credit Corp. v. Lech,* 231 Neb. 798, 438 N.W.2d 474 (1989); *Artex, Inc. v. Omaha Edible Oils, Inc.,* 231 Neb. 281, 436 N.W.2d 146 (1989). This means it is for the court to initially decide whether a provision in the contract is susceptible to more than one meaning and therefore ambiguous. Once the court has determined that ambiguity exists, interpretation of the meaning of the ambiguous term or terms becomes a question of fact to be submitted to the trier of fact. *Luschen Bldg. Assn. v. Fleming Cos.,* 226 Neb. 840, 415 N.W.2d 453 (1987). Implicit in the trial court's conclusion that reasonable minds could reach only one conclusion is a finding that the contract is not ambiguous.

The court's having concluded that all assignments of error are without merit, the judgment of the district court is affirmed.

AFFIRMED.