PAUL AND MADELINE DAMMANN, APPELLANTS, V. JUDITH LITTY, DEFENDANT AND THIRD-PARTY PLAINTIFF, AND VIRGINIA GRABARKEWITZ, THIRD-PARTY DEFENDANT, APPELLEES.

452 N.W.2d 522

Filed March 9, 1990.   No. 88-442.

Brian R. Watkins for appellants.

Thomas P. Kenny, of Batt & Brodkey, for appellee Litty.

R. Joseph Henatsch, of Katskee & Henatsch, for appellee Grabarkewitz.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Paul and Madeline Dammann appeal from the judgment of the district court for Lancaster County, which vacated a judgment for $6,714.90 obtained by Dammanns in a county court bench trial on their claim for misrepresentation in the purchase of a residence from Judith Litty. The district court ordered dismissal of Dammanns' action. Also, the district court vacated the judgment for Litty against Virginia Grabarkewitz in a third-party action. See Neb. Rev. Stat. § 25-331 (Reissue 1989) (third-party action).

In an effort to sell her residence in early January 1985, Judith Litty listed the property with Virginia Grabarkewitz, a licensed real estate agent who was generally familiar with the real estate market where Litty's house was located.

At the time Litty and Grabarkewitz entered into the listing agreement for the sale of Litty's house, Grabarkewitz did a "market analysis" for the property, measured every room in Litty's house, and elicited information from Litty regarding special characteristics of the property. The house had a full

basement, which contained a recreation room, a bedroom, and a storage room. Litty informed Grabarkewitz about water and seepage problems in the basement of the house. From the time when Litty acquired the house in 1976, she had to use a "wet-vac" to frequently pump from 10 to 50 gallons of water out of the basement. As an attempt to correct the situation, Litty had outside draintile installed near the south side of the house, adjacent to the southern lot line between her house and a neighbor's. Although she was uncertain about the exact location of the draintile, according to Litty the draintile was outside and somewhere near the southeast corner of the Litty house. Litty's former husband had chipped a hole in the basement floor at the southeast corner to relieve water pressure which built up beneath the floor. When the water problem did not cease, Litty installed a sump pump in the storage room in the basement, which, according to Litty, stopped water from entering the living area in the basement. Nevertheless, water continued to seep into the basement and move into the storage room where the sump pump was located.

Litty instructed Grabarkewitz to contact Stan Litty, who was formerly Judith Litty's husband, if Grabarkewitz wanted any details about the draintile. Grabarkewitz spoke with Stan Litty, who told her that draintile was on the south side of the house and possibly some draintile was on the east side of the house near the basement. Stan Litty also told Grabarkewitz that he had made a small "channel" in the basement concrete floor to carry water which seeped through the walls to the sump pump in the basement storage room.

From her market analysis, Grabarkewitz drafted a "Highlights" sheet for Litty's house, a document prepared for distribution to a prospective purchaser, which listed general information about the sale property, such as the house's square footage, dimensions of rooms, lot size, annual real estate taxes, and the listing price for the property. The highlights sheet also contained: "The home has central air conditioning, forced air gas heat, drain tile and sump pump in the basement."

Dammanns first saw the Litty house during an open house on February 17, 1985, at which time they received a copy of the highlights sheet prepared by Grabarkewitz. Approximately 1

week later, Grabarkewitz took the Dammanns on a private tour of the house. The house was fully furnished, including a beanbag chair in the southeast corner of the basement. Inside the poorly lighted storage room were several items which prevented Dammanns' thorough inspection of the basement storage area, and various furnishings covered the basement walls. During the tour, Dammanns questioned Grabarkewitz about the condition of the basement and informed her that the home must have a dry basement because Dammanns owned considerable electronic equipment which would be located in the basement. Grabarkewitz told the Dammanns that the basement was dry and that Litty had recently installed new carpet in the basement recreation room and bedroom.

On the bases of the information in the highlights sheet, Grabarkewitz' representations, and their tours of the premises, Dammanns offered on March 10, 1985, to purchase the Litty house. Judith Litty had never met or spoke with Dammanns about their prospective purchase of Litty's house. Grabarkewitz was the only real estate agent involved in the transaction.

On the day of closing, April 25, 1985, Dammanns went to the house for a final "walk-through" with Grabarkewitz and discovered a large, damp spot at the southeast corner of the basement wall, where water had seeped through the wall and soaked the basement carpet. When Paul Dammann pulled the carpet away from the corner, revealing some water in a hole with a diameter of 5 to 6 inches, he asked Grabarkewitz about the situation. Grabarkewitz responded that the hole was "part of the drain tile system or the drain tile." Grabarkewitz stated that possibly cleaning the draintile would eliminate any problem, and suggested that $500 of the sale proceeds be placed in escrow to cover the cost of work on the draintile. Grabarkewitz telephoned Judith Litty, who agreed to the $500 escrow deposit regarding the draintile. In view of the escrow arrangement, the sale was closed.

After closing, Dammanns moved into the house and soon discovered that the basement had a very serious water problem. Water appeared at several locations on the basement walls, ran down the walls, and entered the storage room. Later,

Dammanns learned that there was no draintile in the basement.

To solve the water problem, Dammanns hired a waterproofing company, which constructed a draintile system in the basement of the house and installed three sump pumps—measures which cost $6,160. Dammanns replaced the water-damaged basement carpet valued at $554.90.

When Judith Litty refused to reimburse Dammanns for their expenses concerning the basement, Dammanns sued Litty in the county court in an action based on misrepresentation of a material fact and breach of warranty. In their petition, Dammanns specifically referred to the "advertisement" for the Litty house, that is, the statement in the highlights sheet that the house had "drain tile and sump pump in the basement," and alleged that they had relied on that representation in connection with the Litty sale.

Dammanns' evidence established that they would not have purchased the Litty house had the Dammanns "known that the representations about drain tile being in the basement were not true." Paul Dammann testified that the Dammanns relied on the representations contained in Grabarkewitz' highlights sheet. Included in Dammanns' evidence on damages was the cost of repairs for the basement, i.e., draintile construction, installation of sump pumps, and replacement of water-damaged carpet. Grabarkewitz testified that in drafting the highlights sheet for the Litty house, she did not intend to state that there was "drain tile in the basement."

As a result of the trial in the action commenced by Dammanns, the county judge found:

(1) Ms. Grabarkewitz made material representations to [the Dammanns] that basement water problems had been resolved by the work and the fixtures installed by the Littys and further that there was an adequate drain tile system part of which at least was internal to handle or resolve the water problem; (2) that such representations were false; (3) with respect to the highlight sheet, Ms. Grabarkewitz either knew it was false when made or it was made recklessly without adequate knowledge of its truth but nonetheless, as an intentional positive assertion. With respect to the basement water problem being resolved by

the equipment, improvements, and fixtures, Ms. Grabarkewitz knew there was still a problem which had not been completely resolved. Her statements were false. With respect to the drain tile, the representations made by Ms. Grabarkewitz to the Dammanns were false; (4) that all representations made by Ms. Grabarkewitz to the Dammanns were made with the sole purpose of persuading them to purchase the property — to rely upon the representations as the truth; (5) that the Dammanns did rely and even at the date of closing, might otherwise have not gone through with the closing had it not been for said reliance; (6) that the Dammanns sustained damages as a result of said representations and reliance.

Consequently, the county court awarded a judgment of $6,714.90 to Dammanns. Regarding Litty's third-party action against Grabarkewitz, the court awarded judgment to Litty, which corresponded with the judgment entered in favor of Dammanns.

Both Litty and Grabarkewitz appealed to the district court, which decided that "[t]he findings and conclusions of the trial court as to the proof of the representations made by the agent of the seller are not supported by the evidence, and this reviewing court is not obligated to accept said findings and conclusions." For that reason, the district court reversed both judgments of the county court and dismissed the actions.

Dammanns have appealed and contend that the district court erred in (1) making an independent finding of fact as an appellate court reviewing a decision of the county court in a law action and (2) concluding that Dammanns failed to prove their claim based on misrepresentation.

The essence of Litty's theory for this case is embodied in an excerpt from her appellate brief:

Much was made at trial over the Highlight Sheet containing the phrase "The home has central air conditioning, forced air gas heat, drain tile and sump pump in the basement." The record shows that there was a sump pump in the basement, and drain tile on the property at the time of the sale, although the tile was not located in the basement. Mrs. Grabarkewitz testified that

when she typed the Highlight Sheet, she did not realize the ambiguity of the phrase and did not intend to state that there was drain tile in the basement.

If read favorably to the defendant, the statement is true. If read for the plaintiffs, one must remember that Mrs. Grabarkewitz testified that the location of the drain tile was not knowingly misstated. If read realistically, the statement is ambiguous and shouldn't have been relied upon.

Brief for appellee Litty at 9.

## STANDARD OF REVIEW

"On appeal of a county court's judgment rendered in a bench trial of a law action, the district court reviews the 'case for error appearing on the record made in the county court.' [Citation omitted.] A county court's factual findings in a bench trial of a law action have the effect of a verdict and will not be set aside unless such findings are clearly erroneous." *Holden v. Urban*, 224 Neb. 472, 474, 398 N.W.2d 699, 701 (1987).

As appellate courts, reviewing a judgment in a bench trial of a law action in the county court, the Supreme Court and a district court do not reweigh evidence, but consider the judgment in the light most favorable to the successful party and resolve evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

*Mason v. Schumacher*, 231 Neb. 929, 931, 439 N.W.2d 61, 63-64 (1989). See, also, Neb. Rev. Stat. § 25-2733(1) (Reissue 1989): "In all cases other than appeals from the Small Claims Court, the district court shall review the case for error appearing on the record made in the county court . . . ."

## AMBIGUITY IN THE HIGHLIGHTS SHEET

"Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *Knox v. Cook*, 233 Neb. 387, 391, 446 N.W.2d 1, 4 (1989). See, also, *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987).

"Whether a document is ambiguous is a question of law

initially determined by the trial court." *Knox v. Cook, supra* at 391, 446 N.W.2d at 4. See, also, *First Nat. Bank in Mitchell v. Kurtz,* 232 Neb. 254, 440 N.W.2d 432 (1989); *Luschen Bldg. Assn. v. Fleming Cos.,* 226 Neb. 840, 415 N.W.2d 453 (1987).

"Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman,* 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). See, also, *Boisen v. Petersen Flying Serv.,* 222 Neb. 239, 383 N.W.2d 29 (1986).

When a court has determined that ambiguity exists in a document, an interpretative meaning for the ambiguous word, phrase, or provision in the document is a question of fact for the fact finder. *First Nat. Bank in Mitchell v. Kurtz, supra*; *Bedrosky v. Hiner,* 230 Neb. 200, 430 N.W.2d 535 (1988); *Lueder Constr. Co. v. Lincoln Electric Sys.,* 228 Neb. 707, 424 N.W.2d 126 (1988).

We agree with Litty's observation that there is "ambiguity of the phrase" found in the highlights sheet, namely, "The home has . . . drain tile and sump pump in the basement." On one hand, the language in question is susceptible to a conjunctive interpretation that both the draintile and sump pump are located in the basement of Litty's house. However, the indicated language in the highlights sheet is susceptible to still another interpretation, namely, the subject premises include the house and draintile, wherever the draintile may be, inside or outside the house, and there is a sump pump in the basement of the house.

Consequently, the language "The home has . . . drain tile and sump pump in the basement," used in the highlights sheet prepared by Grabarkewitz for the Litty sale, is ambiguous, a legal conclusion reached by this court and implicit in the county court's eventual factual determination that Grabarkewitz had represented that "part of [the draintile system] at least was internal," or inside Litty's house. Given the ambiguity in Grabarkewitz' highlights sheet, the county court's factual determination regarding the meaning of the ambiguous language in that document is not clearly erroneous.

## LIABILITY FOR MISREPRESENTATION

"Misrepresentation is a manifestation, by word or conduct, which constitutes an assertion not in accordance with fact." *Edwin Bender & Sons v. Ericson Livestock Comm. Co.*, 228 Neb. 157, 162, 421 N.W.2d 766, 770 (1988).

> To recover in an action for fraud based on a misrepresentation of fact, a plaintiff must prove that (1) the defendant made a representation of a material fact; (2) the representation was false; (3) the representation, when made, was known to be false or was made recklessly as a positive assertion without knowledge concerning the truth of the representation; (4) the representation was made with the intention that the plaintiff would rely on it; (5) the plaintiff reasonably relied on the representation; and (6) as the result of such reliance, the plaintiff suffered damage.

*Edwin Bender & Sons v. Ericson Livestock Comm. Co., supra* at 165-66, 421 N.W.2d at 771.

An intent to deceive is not an indispensable element in a cause of action for fraud based on misrepresentation of a material fact. *Nielsen v. Adams*, 223 Neb. 262, 388 N.W.2d 840 (1986). See, also, *Edwin Bender & Sons v. Ericson Livestock Comm. Co., supra* at 165, 421 N.W.2d at 771: "[T]he representation, when made, was known to be false *or* was made recklessly as a positive assertion without knowledge concerning the truth of the representation . . . ." (Emphasis supplied.)

Even Litty admits that no draintile system existed inside her house. The evidence conclusively established that Dammanns would not have purchased the Litty house without a draintile system. Hence, existence of a draintile system within Litty's house was material to Dammanns' purchase of the house. That Dammanns relied on Grabarkewitz' representations about the Litty house's draintile system, made in the highlights sheet and during the "walk-through," is beyond question. The county court record contains evidence sufficient to sustain the factual findings by that court. Nevertheless, the district court, in reversing Dammanns' judgment obtained in the county court, expressed: "[T]his reviewing court is not obligated to accept said findings and conclusions" of the county court. The

preceding expression does not reflect the appropriate standard of review applicable to the district court in its function as an appellate court reviewing a county court's factually supported decision in a law action. See, *Mason v. Schumacher*, 231 Neb. 929, 439 N.W.2d 61 (1989); § 25-2733.

Because the evidence supports the factual underpinnings for the county court's decision, we must reverse the district court's judgment which vacated the county court's judgment in favor of Dammanns. However, reversal of the district court's decision concerning the county court judgment for Dammanns does not affect the judgment initially entered by the county court in Litty's third-party action against Grabarkewitz and subsequently vacated by the district court as the result of the appeals by Litty and Grabarkewitz. Regarding the third-party action authorized by § 25-331, we have stated:

Section 25-331 authorizes a third-party action by a defendant, as a third-party plaintiff, against a person, initially not a party to the action, who is or may be liable to the initial defendant for all or part of the plaintiff's claim against the defendant. A third-party claim under § 25-331 may be asserted when a third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant. [Citation omitted.] The basic function of third-party practice is the original defendant's seeking to transfer to the third-party defendant the liability asserted by the original plaintiff. [Citations omitted.]

*Schuyler State Bank v. Cech*, 228 Neb. 588, 592, 423 N.W.2d 464, 467-68 (1988). See, also, *Church of the Holy Spirit v. Bevco, Inc.*, 215 Neb. 299, 338 N.W.2d 601 (1983).

Litty has taken no cross-appeal from the district court's action in setting aside Litty's judgment obtained against Grabarkewitz in the third-party action. Thus, correctness of the district court's action in reversing the third-party judgment and dismissing Litty's third-party petition and action is beyond the review authorized in the present appeal. See *Young Radiator Co. v. Celotex Corp.*, 881 F.2d 1408 (7th Cir. 1989) (appellate rule regarding a cross-appeal is jurisdictional; hence, reversal of a judgment against a plaintiff in the initial action does not

entitle a defendant and third-party plaintiff, in the absence of a properly filed cross-appeal, to challenge a judgment obtained by a third-party defendant in a third-party action).

Inasmuch as only Dammanns have appealed from the district court's decision, we reverse the district court's judgment which set aside the county court's judgment for Dammanns, and remand this matter to the district court with direction to reinstate and affirm the judgment obtained by Dammanns in the county court.

REVERSED AND REMANDED WITH DIRECTION.