PRAWL ENGINEERING CORPORATION, APPELLANT, V. CHARLES VRANA AND SON CONSTRUCTION COMPANY, APPELLEE.

486 N.W.2d 24

Filed July 17, 1992.    No. S-89-1182.

Brien M. Welch, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Michael F. Coyle, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

GRANT, J.

Plaintiff, Prawl Engineering Corporation (Prawl), appeals the August 31, 1989, ruling of the district court for Douglas County, affirming the March 8, 1988, ruling of the county court for Douglas County which, after trial, had found in favor of defendant-appellee, Charles Vrana and Son Construction Company (Vrana), and had dismissed Prawl's petition. Prawl timely appealed to this court.

In its appeal, Prawl asserts that the county and district courts erred (1) in finding that plaintiff, as a subcontractor, was bound by a contract entered into between the owner of a project and the general contractor; (2) in their construction of the plain meaning of the subcontract agreement as a matter of law; and (3) in failing to award any damages to plaintiff for partial performance of work performed on the job plus lost profits. We note that the errors complained of were not committed jointly by the county court and the district court. The case was tried by the county court and affirmed by the district court in its appellate capacity. We shall so review the case.

No specific assignments of error were made in the notice of appeal from county court to district court, but our decision of *State v. Erlewine*, 234 Neb. 855, 452 N.W.2d 764 (1990), was handed down after the trial decision, and that case was not applicable at the time of the appeal to the district court.

The record before the trial court shows the following: On May 7, 1987, Vrana entered into a subcontract agreement with Prawl for sheet metal work to be done on a new construction

project at One Pacific Place in Omaha. Vrana had entered into a contract with One Pacific Place Venture, hereinafter referred to as Owner, to act as general contractor to construct a retail center designed by Owner's architectural firm, Gensler & Associates. The project was originally designed to be a two-story retail strip shopping center.

In preparation for the subcontract work, Prawl began drafting shop drawings. These documents cost Prawl $407 in labor and materials. This work was not directed by Vrana to begin. In June 1987, Owner contacted Vrana and ordered it to cease all work because the land and the project were going to be sold. Vrana then contacted its subcontractors, including Prawl, which as yet had not performed any work on the job site, and relayed the message.

The project and site were sold by Owner to PTM Specialty Centers (PTM), and new plans were drafted by a different architectural firm. The new plans called for a much larger, one-story complex and an additional building. In September 1987, Vrana successfully bid for the general contract on the new PTM project.

Vrana received sketches prepared by the new architects and forwarded them to Vrana's subcontractors under the previous contract. Prawl agrees that it had copies of the new plans by late November 1987. Vrana requested that the subcontractors submit new proposals for the new project.

Prawl's drafting department found the sketches to be incomplete for Prawl's purposes and attempted to make more detailed drawings of its portion of the work.

Vrana, for its part, was under a deadline to have the PTM project substantially completed by May 1, 1988. This substantial performance on the part of Vrana would have required completion of the sheet metal work. During December 1987, January 1988, and early February 1988, Vrana received no complete or precise estimate of costs from Prawl. On February 26, 1988, Vrana entered a subcontract agreement with Sol Lewis Engineering for sheet metal work on the new project.

A letter from Prawl to Vrana, dated March 23, 1988, listed a breakdown of the outside sheet metal costs for the two buildings, but contained no costs for signage, which was also a

necessary part of the sheet metal project. The letter was dated almost a month after Sol Lewis signed a contract with Vrana. The Vrana-Sol Lewis contract was based on Sol Lewis' bid submitted pursuant to the new architect's sketches.

On March 24, 1988, an employee of Prawl drove by the site and saw sheet metal work being done by Sol Lewis. Prawl immediately contacted Vrana and learned that Vrana had contracted with Sol Lewis 4 weeks previously.

Prawl instituted this action, alleging that Vrana breached the May 7, 1987, contract with Prawl by contracting with Sol Lewis. Vrana responds that the original work contracted for was never done because ownership changed and that the May 7 agreement was not relevant to Vrana's contract with PTM. Therefore, if Prawl had wanted a subcontract with Vrana for the PTM project, a new and complete bid would have to have been submitted. Prawl did not timely submit a bid under the PTM contract, and Vrana ultimately awarded a new subcontract to Sol Lewis.

Prawl's first two assignments of error allege that the trial court erred in interpreting the plain meaning of the May 7, 1987, contract between Vrana and Prawl to mean that "plaintiff [Prawl] is bound by a contract entered into between the owner [Owner] of a project and the general contractor [Vrana]."

The findings of the trial court were based on language in the subcontract agreement between Vrana and Prawl. Prawl contends there is error in the county court's conclusion that "plaintiff's sub-contract work is subject to the plans and specifications submitted by the Owner . . . and as those plans and specifications may change during the course of the project."

We have stated that a written contract which is expressed in clear and unambiguous language is not subject to interpretation or construction. *Artex, Inc. v. Omaha Edible Oils, Inc.*, 231 Neb. 281, 436 N.W.2d 146 (1989). Also, words used in a contract must be given their plain and ordinary meaning, as ordinary, average, or reasonable persons would understand them. *Id.*

The language of the Vrana-Prawl contract is clear. Article III

provides: Prawl agrees "[t]o begin the work herewith contracted for as soon as the project . . . is ready for such work . . . All work to be done when and as directed by the project superintendent."

Article X provides that Prawl was

> [t]o be bound to [Vrana] by the terms of the general conditions of the specifications and addenda, and to conform to and comply with the drawings and specifications and addenda, and to assume toward [Vrana] all the obligations and responsibilities that [Vrana] assumes in and by the aforesaid documents toward [Owner.]

Finally, article XII provides that "[Vrana] shall have the right to order in writing the omission of the parts of the work, or materials as omitted from the general contract . . . by the architect and/or Owners . . . ."

Without question, no construction work ever began as contemplated by the original contract between Vrana and Owner under the original plans. When Owner ordered Vrana to stop all work on the site, and then sold the project and site to PTM, the essence of the order, as far as Prawl was concerned, was a complete omission or cancellation of the sheet metal work for which Prawl had subcontracted. Vrana was entitled under the subcontract agreement to order this omission.

When the project was resold to PTM, no matter what the project design, Vrana had to rebid, and, therefore, it needed new bids from its subcontractors for the new and different project.

The Prawl-Vrana contract clearly provides for the omission of work and an accompanying reduction in payment. The contract also provides that Prawl was bound to Vrana for job specifications, as Vrana was bound to the Owner. The Owner ordered omission of all work not yet begun, and since no order had been given to Prawl to begin work, this meant complete omission of Prawl's duties under the subcontract. No work was ordered, none was done on the site, and Prawl is entitled to nothing.

Prawl's final assignment asserts that it was error for the lower courts to fail to award appellant damages and lost

profits. As we have found that Prawl has no cause of action against Vrana, we also find that Prawl is entitled to no damages from Vrana. Appellant's final assignment is without merit.

Having found no merit to any of Prawl's assignments of error, we affirm the order of the district court, affirming the county court's judgment.

AFFIRMED.