INTERNATIONAL HARVESTER CREDIT CORPORATION, NOW KNOWN AS NAVISTAR FINANCIAL CORPORATION, APPELLEE, V. HARRY LECH AND LECH EQUIPMENT, INC., APPELLANTS.

438 N.W.2d 474

Filed April 14, 1989. No. 87-572.

Vince Kirby for appellants.

Geraldine L. Clanton, of Schmid, Mooney & Frederick, P.C., for appellee.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and BURKHARD and HANNON, D. JJ.

HASTINGS, C.J.

Defendants, Harry Lech and Lech Equipment, Inc., have appealed from the judgment of the district court which granted summary judgment to the plaintiff on its suit for replevin of a combine and a corn head. Defendants' three assignments of error may be summarized as asserting that the trial court erred in granting summary judgment because there are genuine issues of material fact that are unresolved. We affirm.

Harry Lech operated Lech Equipment as an International Harvester (IH) dealer for 24 years, until his franchise was voluntarily terminated in December of 1984.

In January 1981, Lech Equipment took delivery of an IH combine for a purchase price of $46,432.50 and, in October 1982, took delivery of an IH corn head for a purchase price of $9,780.72.

The two pieces of equipment became part of Lech Equipment's inventory, which was financed under the floor plan Lech Equipment had with either IH, according to the affidavit of Harry Lech, or International Harvester Credit Corporation (IHCC), in line with Lech's deposition testimony. There is no indication in the record that the purchase prices have ever been paid.

On October 31, 1983, apparently in an effort to aid in the financing of Lech Equipment, IH and Lech Equipment entered into a retail installment contract regarding the combine and corn head. The retail installment contract named IH as the seller and Lech Equipment as the purchaser, and required Lech Equipment to make four annual payments of $17,772.99, commencing on November 1, 1984. The contract was signed by Harry Lech as or for the purchaser, and was approved for IH by an indecipherable signature as "mgr." This particular document contained some blank spaces in the lower left-hand corner to

permit the assignment of the contract to IHCC. The pertinent language was "APPROVED for Seller and ASSIGNED TO IHCC under the terms of Assignment # 1, appearing on the reverse of this contract." The handwritten words "Lech Equipment, Inc.," appear on the signature line for the seller, but they have been crossed out. The net effect, it would seem, is that no one executed the assignment on the part of the seller as was contemplated by the retail installment contract form which was employed.

Lech Equipment failed to make the first payment due on November 1, 1984. Thereafter, on December 4, 1984, an extension agreement was signed by Harry Lech on behalf of Lech Equipment to extend the due date of the installment payment to January 1, 1985. The extension agreement refers to the combine and corn head by model number and serial number. It recites that IHCC agrees to

> extend due date(s) of the following retail installment payments subject to the terms and conditions set forth below:

| Contractual Amount of Installment | Original Contract Due Date | Amount of Installment Extended | Extended Due Date |
|---|---|---|---|
| 17,772.99 | 11-1-84 | 17,772.99 | 1-1-85 |

> . . . .
> 2. Except as modified by this extension agreement, all the terms and conditions contained in the retail installment contract/installment note and security agreement date 10-31-83 between Lech Equipment as purchaser and International Harvester Co. as seller which has been assigned to International Harvester Credit Corporation shall remain in full force and effect.

The agreement was signed on behalf of IHCC by its district manager, followed by the words, "The undersigned Lech Equip (purchaser) hereby acknowledges that the terms and conditions of this extension agreement are accepted." The agreement was dated January 4, 1984, and signed by "Lech Equip by Harry J Lech."

Lech testified that he signed the extension agreement, marked exhibit 14, on behalf of Lech Equipment and that it was

an extension agreement of the security agreement dated October 31, 1983, mentioned above, and which was marked as exhibit 9.

Lech Equipment failed to make any of the payments required under the contract. IHCC, as the assignee of the retail installment contract, made demand for payments or for return of the equipment. Lech Equipment refused. IHCC then brought this replevin action, claiming a special ownership interest in the equipment by virtue of the retail installment contract assigned to it by IH. IHCC claims that the indebtedness of Lech Equipment is in the amount of $37,390.99 plus interest. Lech and Lech Equipment denied any special ownership interest by IHCC, claiming Lech Equipment obtained title to the equipment by virtue of the delivery invoices and therefore IH had no title to the equipment in 1983 so as to enable it to sell the equipment to Lech Equipment under the retail installment contract.

Harry Lech acknowledges his signature on the retail installment contract, acknowledges that payments were not made to IHCC, and acknowledges receipt of demands from IHCC that payments be made.

Summary judgment is an extreme remedy to be awarded only when an issue is clear beyond all doubt. *Strother v. Herold*, 230 Neb. 801, 433 N.W.2d 535 (1989); *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988). It is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts, and when the moving party is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1985); *Svoboda v. First Nat. Bank of O'Neill*, 230 Neb. 595, 432 N.W.2d 806 (1988); *Everlasting Golden Rule Ch. v. Dakota Title*, 230 Neb. 590, 432 N.W.2d 803 (1988).

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Svoboda, supra*; *Everlasting Golden Rule Ch., supra*.

However, the construction of a written contract, if needed, is

a question of law for the court. *Artex, Inc. v. Omaha Edible Oils, Inc., ante* p. 281, 436 N.W.2d 146 (1989).

The cardinal question in every replevin action is whether the plaintiff was entitled to immediate possession of the property replevied at commencement of the action. *Arcadia State Bank v. Nelson*, 222 Neb. 704, 386 N.W.2d 451 (1986). According to IHCC, the contract represented a retail sale of the combine and corn head to Lech Equipment and granted IHCC, as assignee of the contract, a purchase money security interest in the equipment to secure the amount of indebtedness owed under the contract. Lech, however, claims that the contract was not intended by the parties to represent a retail sale but, rather, was intended to be an extension of Lech Equipment's floor plan to keep the equipment wholesale and to extend the due date because Lech could not obtain local financing to make the floor plan payment that was due. Resolution of the dispute turns on an interpretation of the retail installment contract.

There is a strong presumption that a written instrument correctly expresses the intention of the parties to it. *Artex, Inc. v. Omaha Edible Oils, Inc., supra*; *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988). Parties are bound by the terms of the contract even though their intent may be different from that expressed in the agreement. *Artex, supra*; *Bedrosky, supra.*

Defendants argue that the transaction between Lech Equipment and IH was not a retail sale and that IHCC had no special ownership interest in the property by reason of the assignment. It is defendants' position that Lech, or his company, owned every piece of equipment in the inventory despite not having paid anything on it, because they would be held responsible in case of loss. Therefore, defendants reason, IH could not have sold the equipment to Lech Equipment because IH did not have title.

Defendants cite *Mansinger v. Steiner-Medinger Co.*, 4 Neb. (Unoff.) 392, 94 N.W. 633 (1903), in support of their position. In *Mansinger*, which was a replevin action, the court found that an instrument purporting to change an absolute sale between the parties into a conditional sale was not a contract and therefore was unenforceable. The court reasoned that title to the subject of the instrument, flour, had passed to the vendee as

a result of the first contract between the parties, and therefore the vendor had no title to pass under the alleged conditional sale.

However, *Mansinger* is distinguishable on the facts. The first transaction between IH and Lech Equipment, delivery of the equipment from IH to Lech Equipment, was not an absolute sale. Rather, Lech Equipment took *possession* of the equipment subject to payment of the purchase price. No title ever passed from IH to Lech Equipment. Therefore, IH did have title to the equipment in 1983 when the parties entered into the retail installment contract. Even Lech, in his deposition, acknowledged that he never paid anyone for the combine or corn head and that the owner was the person or entity to whom he owed the money.

Lech and his company also claim that the retail installment contract was intended to be an extension of Lech Equipment's floor plan, not a retail sale. However, this court has stated: "It is well-established law in this state that the interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence." *Nowak v. Burke Energy Corp.*, 227 Neb. 463, 471, 418 N.W.2d 236, 241-42 (1988); *Marvin E. Jewell & Co. v. Thomas, ante* p. 1, 434 N.W.2d 532 (1989).

The contract was not treated as an extension of the floor plan. Shortly after the retail installment contract was entered into, the combine and corn head no longer appeared on the monthly summary of outstanding wholesale notes Lech Equipment received from IHCC for items on the floor plan.

In addition to the monthly summary of outstanding wholesale notes, IHCC would send Lech Equipment due notices for wholesale notes. The last due notice for the combine was dated February 18, 1984. The corn head was not included on the February 18 due notice. Neither the combine nor the corn head appeared on the March 24, 1984, due notice.

Lech Equipment also received floor plan verification reports from IHCC indicating what pieces of equipment were supposed to be part of the inventory, and the monthly inventory was confirmed by representatives of IHCC. Neither the combine

nor the corn head appeared on the March 1984 floor plan verification report, indicating the representatives of IHCC were no longer checking to make sure the combine and corn head were part of Lech Equipment's inventory.

Other evidence favoring IHCC's version of the transaction as a retail sale includes the extension agreement, demands from IHCC for the downpayment, and demands from IHCC for the payments under the contract. Additionally, the warranty and delivery registration for the combine indicates delivery to a retail customer, Lech Equipment.

Despite repeated assertions that the contract was intended to extend the floor plan, Lech testified during his deposition, "The biggest concern was the 10-31, to get it off of the wholesale — floor plan."

When the terms of a contract and the facts and circumstances that aid in ascertaining the intent of the parties are insufficient to raise an issue of fact, the interpretation of the contract is a matter of law. *Watmore v. Ford*, 229 Neb. 121, 425 N.W.2d 612 (1988). The terms of the retail installment contract and the facts and circumstances that aid in ascertaining the intent of IH and Lech Equipment in entering into the installment contract are insufficient to raise an issue of fact.

Finally, Lech and Lech Equipment argue that IHCC did not have a valid assignment of the contract because the signature of Lech Equipment as the seller and assignor had been crossed out. However, under the terms of the retail contract, as previously stated, IH was the seller, not Lech Equipment. True enough, IH's signature as seller and assignor did not appear on the contract. However, Michael Duffy, district collection supervisor for IHCC, indicated in his affidavit that the contract had been duly assigned to IHCC. More importantly, however, Lech orally acknowledged that the contract had been assigned, and by executing the extension agreement, exhibit 14, he acknowledged the assignment in writing.

There is no genuine issue of material fact presented in the record, and IHCC is entitled to judgment as a matter of law. The judgment of the district court is affirmed.

AFFIRMED.