RODNEY K. LICHTY, APPELLANT, V. THE FEDERAL LAND BANK OF OMAHA, A CORPORATION, ET AL., APPELLEES, BRUNING STATE BANK, A CORPORATION, INTERVENOR-APPELLEE.

467 N.W.2d 657

Filed March 29, 1991. No. 88-1033.

John C. Hahn, of Jeffrey, Hahn & Hemmerling, P.C., for appellant.

Ronald G. Sutter, of Everson, Wullschleger, Sutter, Korslund & Willet, for appellee Federal Land Bank.

Joseph H. Murray, of Germer, Murray & Johnson, for appellees Bruning State Bank and Korff.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

Plaintiff-appellant, Rodney K. Lichty, assigns as error the district court's sustainment of defendant-appellee The Federal Land Bank of Omaha's motion for summary judgment and the resultant dismissal of his action to replevin a center pivot irrigation system. We affirm.

Plaintiff's father borrowed money from intervenor-appellee, Bruning State Bank. As collateral for this and any future loans, the father granted Bruning a security interest in "all equipment, including but not limited to all farm equipment, tractors, machinery and implements," "whether now owned or hereafter acquired." Although the record does not indicate when the pivot in question was first acquired by the father, the parties do not contest the fact that it was covered by the security interest.

Later, the father and his wife gave Federal a mortgage to the farm on which the pivot was located and where it has always remained. Following default, Federal foreclosed the mortgage and purchased the farm.

After Federal purchased the farm, the father, Bruning, and Federal began to discuss the sale of the pivot to Federal. During these conversations, it was contemplated that the father would join in any bill of sale. Following the father's default on his Bruning loan, Bruning executed a bill of sale to the pivot in favor of Federal, in which the father did not join. Nonetheless, negotiations apparently continued between Federal and the father for a few more days, but nothing came of them. The father received no advance notice that Bruning intended to proceed without him.

While the father and Federal were negotiating, but after

Bruning had conveyed the pivot to Federal, the father sold a batch of machinery, having an appraised value of $72,690 and purporting to include the pivot, to plaintiff; plaintiff tendered a cashier's check for $54,000, drawn payable to the order of his parents and Bruning; Bruning thereupon released its security interest in "[a]ll equipment, including, but not limited to, all farm equipment, tractors, machinery and implements, any and all titled vehicles, tools . . . or any other items of personal property of the Debtors." Plaintiff was aware of the Bruning-Federal bill of sale when the father sold the equipment to him. A short time later, Federal sold the farm and the pivot to defendant-appellee William S. Korff.

The gravamen of an action for replevin is the plaintiff's immediate right to possession of the property in controversy at the time the action is commenced. *International Harvester Credit Corp. v. Lech*, 231 Neb. 798, 438 N.W.2d 474 (1989); *Barstow v. Wolff*, 148 Neb. 14, 26 N.W.2d 390 (1947); *Blue Valley Bank v. Bane & Co.*, 20 Neb. 294, 30 N.W. 64 (1886).

Because we are dealing with equipment subject to a security interest, article 9 of the Nebraska Uniform Commercial Code is applicable to plaintiff's action. See Neb. U.C.C. § 9-109 (Reissue 1980). The relevant portions of article 9 are as follows: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace . . . ." Neb. U.C.C. § 9-503 (Reissue 1980).

> (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . .
>
> . . . .
>
> (3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to

decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. . . .

(4) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this part or of any judicial proceedings

(a) in the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or

(b) in any other case, if the purchaser acts in good faith.

Neb. U.C.C. § 9-504 (Reissue 1980).

Because the father was in default on his loan from Bruning at the time of the purported sale to plaintiff, Bruning had the right to possession of the pivot, see § 9-503, and was entitled to dispose of it in conformity with § 9-504. Since the pivot was in the possession of the prospective buyer, Federal, Bruning did not need to resort to judicial process in order to obtain possession of the pivot. See § 9-503.

It is plaintiff's position that Bruning did not provide his father with reasonable notice of the time after which Bruning would dispose of the equipment as required by § 9-504(3), that the purported transfer to Federal was therefore void, and that because of this, the later release by Bruning of its security interest in the father's personalty included a release of the security interest in the pivot. However, under the terms of § 9-504(4), a good faith purchaser at a private sale takes the secured property free of the claims of the defaulting debtor, even if the secured seller fails to comply with the provisions of

article 9 of the code.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record show that no genuine issue exists as to any material fact or as to the ultimate inferences that may be drawn from any material fact and that, as a matter of law, the moving party is entitled to judgment. *Coleman v. Chadron State College, ante* p. 491, 466 N.W.2d 526 (1991). Summary judgment is therefore appropriate in this case if there is no genuine issue as to Federal's good faith in purchasing the pivot. If Federal, as a purchaser at a private sale, acted in good faith, § 9-504(4) applies, and Federal took the pivot free of the father's claims; in that event, any subsequent release by Bruning could have no effect as against Federal, and plaintiff's action for replevin cannot lie.

In his brief, plaintiff claims that Federal did not act in good faith. His entire argument in this regard is as follows:

Another inherent requirement concerning the sale of collateral involves good faith on the part of the secured creditor under Neb. U.C.C. 9-507. Prior to this "sale" by [Federal, the father] was recognized as the rightful owner of the center pivot irrigation system . . . . This is evidenced by the fact that the parties realized the pivot could not be sold without first obtaining his signature . . . . It was only after the sale occurred that [Federal] and [Bruning] stated the signature of [the father] was not required. This belief was premised upon [the father] supposedly being in default on his security agreement. However, as was stated before, no written notice was given to [the father] concerning this situation . . . .

As such, it appears that [Federal] did not act in good faith concerning this "sale" of the center pivot irrigation system.

(Citations to record omitted.) Brief for appellant at 9-10.

Since the argument refers to "good faith on the part of the secured creditor" and refers to the sale *by* Federal rather than the sale *to* Federal, it appears the argument assumes that Federal held the security interest to the pivot. Yet, the sale by Federal would be the sale to Korff. If indeed this is the

transaction which plaintiff claims involved a lack of good faith by Federal, it is immaterial as far as plaintiff's right to possession of the pivot is concerned. In that connection, it is Federal's good faith as a purchaser under § 9-504(4) that concerns us, and it is the Bruning-Federal transaction, not the Federal-Korff transaction, which is the key to plaintiff's rights.

If, however, plaintiff is contending that Federal's purchase was not in good faith, he fails to recognize that once the father was in default on his security agreement with Bruning, his signature on a bill of sale was unnecessary, no matter what the parties discussed. Federal's acceptance of the bill of sale cannot therefore, without more, evince bad faith. The only purported impropriety to which plaintiff points is Bruning's failure to give the father the notice required by § 9-504. There is nothing in the record, however, which implicates Federal in this or which would indicate that Federal had reason to suspect that Bruning failed to give the father notice. The failure to give notice is neither attributed nor attributable to Federal. Moreover, plaintiff's petition does not allege the absence of good faith on the part of Federal, does not allege any facts which could be construed as indicating lack of good faith, nor does it even make mention of the Bruning-Federal transaction.

In sum, the record before the district court did not raise any material issues of fact or the ultimate inferences which may be drawn from any material fact which, if decided in favor of plaintiff, would have entitled him to the relief requested against Federal.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.