IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ENGINEERING SPECIALISTS, INC. V. MICRONOC, INC.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ENGINEERING SPECIALISTS, INC., APPELLANT AND CROSS-APPELLEE,

V.

MICRONOC, INC., ALSO KNOWN AS MIRCONOC, INC., APPELLEE AND CROSS-APPELLANT.

Filed January 20, 2026.    No. A-24-927.

Appeal from the District Court for Douglas County: KATIE L. BENSON, Judge. Affirmed.

James R. Place, of Place Law Office, for appellant.

Stevie L. Lewis and William J. Hale, of Goosmann Law Firm, P.L.C., for appellee.

RIEDMANN, Chief Judge, and PIRTLE and FREEMAN, Judges.

FREEMAN, Judge.

## INTRODUCTION

Engineering Specialists, Inc. (ESI), appeals the order awarding ESI $12,483.26 for breach of contract entered by the district court for Douglas County. ESI argues, that based on the evidence, the district court erred in its award of damages to ESI. Micronoc, Inc. (Micronoc), cross-appeals the order denying its counterclaim for breach of contract. Micronoc argues that the district court erred when it did not determine that ESI was required to produce a written report of its findings. For the reasons explained below, we affirm.

## BACKGROUND

Micronoc contacted ESI to investigate a fire that occurred at its facility in California on August 21, 2021. Specifically, ESI was to "look at the battery cabinet, the power surges in the area, and to determine the cause and the origin of the fire within the electrical closet in their space." On August 28, 2021, a retainer agreement (agreement) was completed that stated the following:

This signed agreement confirms that Engineering Specialists, Inc. (ESI) has been retained by the undersigned on behalf of Micronoc Inc., to provide forensic analysis and fire investigation services in the matter of the fire incident.

. . . .

The nature and scope of the services to be provided by ESI shall be agreed upon between the parties prior to the acceptance of this assignment and commencement of any work performed by ESI.

. . . .

1. An initial retainer fee of ($9,750.00) 50% of estimated cost of investigation, estimated at a fee not to exceed of [sic] $19,500.00 will be due immediately and payable by Micronoc Inc. upon acceptance of this assignment.

. . . .

This retainer will be applied to the final invoice issued to this specific file.

3. ESI will submit to the undersigned client or other authorized representative service invoices on or about the end of each calendar month. All service invoices are due and payable immediately upon receipt and no later than 10 calendar days from the date of issue, or the client's bill will be subject to an applied late payment fee of $1,000.00 per whole or partial month the payment is late in being received by ESI.

. . . .

5. ESI will make reasonable attempt to minimize the cost of all expenses incurred on the client's behalf. Any expenses incurred in the handling of any assignment shall be charged by ESI at actual cost plus a 20% handling and carrying charge or in accordance with ESI's current rate @ $375.00 per hour . . . . Any additional travel related expenses for litigation purposes, mediation, appraisal, or meeting review visits with the client's insurance carrier and/or other parties will be charged.

. . . .

6. Work beyond the scope of this proposal . . . shall be requested in writing and will be charged at a rate of $375.00 per hour and cost of related travel expenses plus 20% handling charge.

. . . .

8. By the signature below, as an authority with Micronoc Inc. I hereby agree that all invoices shall be paid in full and in a timely manner without regard to the investigative findings, testing results.

Micronoc paid the $9,750 retainer fee to ESI on August 27, 2021. Even before the agreement was fully executed, ESI appeared on site and then conducted two additional site visits in September and December. ESI claimed it received the data it needed and completed a report within a few days of the first site investigation, although it is unclear from the record whether the content of this report was communicated to Micronoc. However, ESI confirmed that a final, written report consisting of 229 pages was completed in mid-February 2022 but was not provided to Micronoc.

According to Anthony Siahpush, president and owner of ESI, ESI was supposed to provide Micronoc with a final, written report at the conclusion of its investigation. However, later Siahpush

explained ESI usually gave an oral report of its investigative findings and not a written report. Siahpush then claimed that it got "locked into" creating a written report for Micronoc based on Micronoc's requests.

Ting Chang, executive vice-president for Micronoc, testified that while she was initially unsure how Micronoc would receive the investigative findings from ESI, she knew ESI was supposed to provide some version of a report. Shelley Chu, Micronoc's director of operations, stated the nature and scope of the services ESI was to provide included a final written report of its findings.

Pursuant to the agreement, "[w]ork beyond the scope of this proposal . . . shall be requested in writing." In February 2022, after ESI had reportedly completed its investigation, ESI asked in writing if Micronoc wanted ESI to attend a destructive exam scheduled by one of the insurance companies. ESI indicated that Micronoc would be charged for ESI's attendance. ESI did not attend the destructive exam because Micronoc did not want to pay. The only written request for additional work contained in the record was for that destructive exam. Siahpush reported that all other claimed requests for work beyond the scope of the investigation were made by phone.

ESI issued its first invoice to Micronoc in December 2021 after its site visits. In March 2022, ESI submitted an invoice to Micronoc for a total of $9,750. The invoice applied the retainer fee of $9,750 and deducted $45,937.50 of charges. Next to the deductions was a description that stated, "NOT TO EXCEED $19,500."

Other than the $9,750 retainer fee, Micronoc made no other payments to ESI, despite acknowledging that the agreement indicated that invoices should be paid in a timely manner regardless of ESI's findings. Chang testified Micronoc did not pay the additional $9,750 because Micronoc did not understand how ESI could be done with its report when other investigators, such as the insurance companies, had not completed their reports.

According to Siahpush, ESI shared a conclusion of its report orally to Micronoc in February 2022 but later stated that it withheld its findings because it had not received payment from Micronoc. Siahpush also stated that Micronoc knew there would be negative results from the investigation, and therefore Micronoc reportedly did not want those findings in writing. Chang disputed Siahpush's claim. When Micronoc did not pay, a demand letter was sent from ESI's attorney. ESI later submitted an additional invoice charging Micronoc a total of $64,170.76.

ESI filed a complaint alleging that Micronoc breached its agreement when it failed to pay the balance of $64,170.76. ESI claimed that all the work it completed beyond the original site visit was outside the scope of the cost of investigation. According to ESI, it had previously reduced the total to $19,500 in the hope that the agreement would end quickly, not because $19,500 was a guaranteed maximum.

Micronoc counterclaimed that ESI breached the agreement when it failed to produce a written report of its findings from the fire investigation. Contrary to ESI's assertions, Micronoc claimed that the written report's findings, whether positive or negative, were needed so Micronoc could correct what caused the fire and continue its research and development. Micronoc claimed it suffered damage when ESI did not produce a written report because, without ESI's findings, it had to delay work on two projects worth two million dollars each. Micronoc also claimed to have suffered reputational damage because it was unable to correct what caused the fire. However,

Micronoc admitted that the insurance companies' investigations could also have delayed the projects and affected its reputation.

After the bench trial, the district court found that the agreement was unambiguous when it stated that the total owed to ESI was not to exceed $19,500. The invoice submitted by ESI supported this interpretation, as it reduced the total to $19,500. The district court also concluded that the retainer agreement did not require ESI to produce a final report before Micronoc paid but did not address whether the final report had to be written. Instead, the agreement stated that "all invoices shall be paid in full and in a timely manner without regard to the investigation findings, [or] testing results." Therefore, the district court ruled that ESI was entitled to the remaining half of the $19,500, which was $9,750 plus $2,733.26 in late fees.

The district court denied Micronoc's breach of contract claim because Micronoc's proof of damages was speculative and conjectural.

After the release of the district court's order, ESI moved for a new trial or to reconsider. ESI claimed, restated, that it was prevented from having a fair trial due to irregularities in the court proceedings; there was an error in the amount of recovery awarded; the ruling was not supported by sufficient evidence; and there were errors in law. According to ESI, the evidence showed that it should have been awarded $64,170.76. The district court denied ESI's motion because ESI failed to "set forth any specific argument to support" its asserted grounds. ESI appeals, and Micronoc cross-appeals.

## ASSIGNMENTS OF ERROR

ESI assigns, restated and restructured, that the district court erred in (1) not awarding it damages in the amount of $64,170.76 and (2) denying its motion for new trial or to reconsider.

Micronoc assigns, restated and restructured, that the district court erred in (1) not finding that ESI was required to produce a written report and (2) finding that it failed to prove damages.

## STANDARD OF REVIEW

The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review. *Rose v. American Family Ins. Co.*, 315 Neb. 302, 995 N.W.2d 650 (2023). A suit for damages arising from a breach of contract presents an action at law. *Dietzel Enters. v. J. A. Wever Constr.*, 312 Neb. 426, 979 N.W.2d 517 (2022). In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong. *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021). After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party. *Id.*

The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *132 Ventures v. Active Spine Physical Therapy*, 318 Neb. 64, 13 N.W.3d 441 (2024). Although the standard of review on appeal for the amount of damages is generally deferential to the trier of fact, the question of whether the evidence of damages is reasonably certain is a question of law. *Dietzel Enters. v. J. A. Wever Constr., supra*.

A motion for new trial is addressed to the discretion of the trial court, and the trial court's decision will be upheld unless it is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Sulzle v. Sulzle*, 318 Neb. 194, 14 N.W.3d 532 (2024).

ANALYSIS

In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Brush & Co. v. W. O. Zangger & Son*, 314 Neb. 509, 991 N.W.2d 294 (2023). Neither party assigns error to the district court's finding that the agreement was unambiguous. Therefore, we will turn our attention to reviewing the district court's other findings.

*Damages Awarded to ESI.*

ESI argues that the district court erred in its award of damages because $19,500 was an estimate and because additional work was completed beyond the scope of the cost of investigation.

Before we address damages, we will first independently review whether the contract's terms indicated $19,500 was an estimate. When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Main St Properties v. City of Bellevue*, 318 Neb. 116, 13 N.W.3d 911 (2024). However, we have stated that the interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence. See *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). This is true even when the contract is unambiguous. See *Professional Serv. Indus. v. J.P. Construction*, 241 Neb. 862, 491 N.W.2d 351 (1992) (considering conduct of parties in support of its interpretation of unambiguous contract). When an estimated figure is a guaranteed maximum or minimum, or when the parties expressly provide otherwise, only then may the court treat the estimate as a fixed amount to which the parties are contractually bound. *Id.*

ESI claims that it should be awarded damages for the expenses charged above $19,500. ESI argues that because there is language describing ESI's work rate and how additional expenses are charged, $19,500 was an estimate. According to the agreement's plain meaning, the district court found that the language "not to exceed of $19,500.00" indicated a guaranteed maximum and not an estimate. The work rate and expense language described the mechanics of how ESI would charge Micronoc up to the $19,500 guaranteed maximum. This interpretation was supported by ESI's conduct when it deducted expenses on the final invoice to make the total equal to $19,500. The invoice itself stated the total was "NOT TO EXCEED $19,500." ESI claims that the reduction of the invoice to $19,500 was to end its work with Micronoc as soon as possible and not because $19,500 was a guaranteed maximum. However, based on our independent review, we agree with the district court that $19,500 was a guaranteed maximum.

We next address the district court's factual findings on the amount of damages awarded to ESI. At oral argument, ESI claimed that the district court erred in its award of late fees for damages. However, late fees were not specifically assigned or argued in ESI's brief. ESI's brief claims there was "sufficient evidence to render a judgment of $64,170.76" because of work performed beyond the scope of the cost of investigation. Brief for appellant at 19-20. An alleged error must be both

specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Saylor v. State*, 315 Neb. 285, 995 N.W.2d 192 (2023). Therefore, we will only consider ESI's claim that there were damages because work was completed beyond the scope of the cost of investigation.

ESI argues that the expenses it charged above $19,500 were for work beyond the scope of the cost of investigation, such as attending additional site visits and producing a written report of its findings. However, this argument is inconsistent with the language of the agreement and the conduct of the parties.

Any work beyond the scope of the investigation "shall be requested in writing." The only written request for work beyond the scope of the investigation contained in the record was when ESI asked Micronoc if it wanted ESI to attend a destructive exam in February 2022. Because ESI claimed it had already completed its investigation prior to February 2022, the destructive exam was beyond the scope of its investigation. However, Micronoc declined ESI's invitation because Micronoc did not want to pay for ESI to attend the destructive exam.

Furthermore, ESI asserts completion of a written report was not contemplated in the original scope of investigation. However, this assertion is not supported by the record. Siahpush and Chu both testified that ESI was supposed to produce a final written report at the conclusion of its investigation, although Siahpush later equivocated that the written report was produced in response to requests by Micronoc. According to ESI, it completed the investigation within days of its initial site visit in August 2021 but then conducted additional site visits in September and December of 2021. ESI issued its first invoice to Micronoc after the December site visit. Subsequently, ESI completed the final report in February 2022. ESI confirmed it withheld production of the written report until Micronoc paid the charges due under the contract. Even though, according to the district court, payment by Micronoc was not conditioned on ESI making that final report, it is reasonable to infer that ESI's production of a final written report was within the initial scope of investigation and thus required for its completion of the contract. Furthermore, if a written report was not within the original scope of the investigation, there was no written request for one as required in the retainer agreement.

ESI claims that the requests for work outside the scope of the cost of investigation were made by phone. However, because the agreement required requests for additional work to be made in writing, it is reasonable to conclude that all work completed by ESI was included in the scope of the investigation. Furthermore, the work that ESI claimed to be beyond the scope of the investigation was included in the final invoice with the $19,500 guaranteed maximum, implying that all the work ESI completed was within the scope of the investigation. Therefore, the district court did not err when it declined to award ESI damages in the amount of $64,170.06 because its actual award was supported by reasonable evidence.

*ESI's Motion for New Trial or to Reconsider.*

ESI argues that the district court erred in denying its motion for new trial or to reconsider. The district court denied ESI's motion for failing to argue each of its asserted grounds for its motion. Even if we were to assume that ESI properly argued its grounds for its motion, ESI's sole argument is based on its claim that the district court erred in its award of damages to ESI. As discussed, the district court did not err in its award of damages to ESI. Based on our independent

review, the agreement contained a guaranteed maximum. The district court's awarded amount was also supported by reasonable evidence. Therefore, the district court did not abuse its discretion in denying ESI's motion for new trial or to reconsider.

*ESI's Written Report.*

Micronoc argues on cross-appeal that the district court erred when it found ESI was not required to produce a written report. It claims that because ESI did not produce a written report, ESI did not substantially perform under the agreement.

Micronoc additionally claims that ESI breached the agreement by not communicating with Micronoc, by not invoicing Micronoc each month, and by charging Micronoc beyond the $19,500 guaranteed maximum. An appellate court will not consider an argument or theory raised for the first time on appeal. *Saylor v. State*, 315 Neb. 285, 995 N.W.2d 192 (2023). Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id.* Micronoc only pleaded that ESI breached the agreement because it did not produce a written report. Therefore, we will limit our analysis to any breach surrounding ESI's requirement to produce a written report. Any other claims regarding how ESI breached the agreement will not be addressed.

We first independently review Micronoc's claim the district court erred when it found that ESI was not required to produce a written report. Specifically, the district court found that "there is no requirement for a final report to be produced *before payment*." (Emphasis added.) The district court never determined that a written report was not required. Instead, it found that Micronoc could not demand a final report before paying any outstanding invoices. We agree with the district court in determining that no final report was required before payment as there was no mention of this in the agreement. Instead, the agreement stated "[a]ll service invoices are due and payable immediately upon receipt and no later than 10 calendar days from the date of issue" and that "all invoices shall be paid in full and in a timely manner without regard to the investigative findings, [or] testing results."

We next review whether the district court erred when it did not find or address whether ESI failed to substantially perform when it did not produce a written report, as argued by Micronoc. To successfully bring an action on a contract, a plaintiff must first establish that the plaintiff substantially performed the plaintiff's obligations under the contract. *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021). Substantial performance is a relative term, and whether it exists is a question to be determined in each case with reference to the existing facts and circumstances. *City of Sidney v. Municipal Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018). As stated, the district court found that ESI did not have an obligation under the agreement to produce a final report before payment. Instead, Micronoc had an obligation to pay. The district court concluded Micronoc was not relieved of its obligation to pay because ESI failed to produce a final report. Based on the existing facts and circumstances, the district court essentially found that ESI substantially performed under the retainer agreement. See *Dietzel Enters. v. J. A. Wever Constr.*, 312 Neb. 426, 979 N.W.2d 517 (2022) (finding district court's factual determination of who breached first was not clearly wrong). Micronoc's assignment of error regarding ESI's substantial performance fails, and it was not clearly wrong for the district court to find in favor of ESI.

*No Damages Awarded to Micronoc.*

Micronoc argues that the district court erred when it did not find that Micronoc was damaged by not receiving a written report from ESI.

It is a basic concept that in any damage action for breach of contract, the claimant must prove that the breach of contract complained of was the proximate cause of the alleged damages. *George Clift Enters. v. Oshkosh Feedyard Corp.*, 306 Neb. 775, 947 N.W.2d 510 (2020). There must be a causal relationship between the damages asserted and the breach relied upon. *Id.* One injured by a breach of contract is entitled to recover all its damages, including the gains prevented as well as the losses sustained, provided the damages are reasonably certain and such as might be expected to follow the breach. *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020). Proof of damages to a mathematical certainty is not required; however, a plaintiff's burden of offering evidence sufficient to prove damages cannot be sustained by evidence which is speculative and conjectural. *Dietzel Enters. v. J. A. Wever Constr., supra*.

Micronoc argues that it suffered at least four million dollars in damages due to two projects being delayed because it did not have a written report indicating ESI's findings regarding the origins of the fire. It also claimed to have suffered reputational damage but did not provide a monetary amount. Micronoc also claims that ESI caused damage by not attending a destructive exam and describes other possible remedies apart from awarding damages, but these alternatives were not specifically pled and will not be addressed. See *Saylor v. State*, 315 Neb. 285, 995 N.W.2d 192 (2023).

As discussed above, we find no error by the district court in assessing that ESI substantially performed under the agreement. However, the district court did not specifically find whether ESI breached the agreement with Micronoc. Instead, the district court found that Micronoc failed to prove damages to support their breach of contract claim. Micronoc's testimony was the only evidence submitted on damages; no reliable financial data was submitted. See *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996) (referencing *Evergreen Farms v. First Nat. Bank & Trust*, 250 Neb. 860, 553 N.W.2d 728 (1996) that found "testimony alone was insufficient to establish lost profits with reasonable certitudel" when no reliable financial data was submitted). Micronoc testified that the insurance companies' investigations could have also delayed the projects and affected its reputation. Therefore, the district court did not err in not awarding Micronoc damages because Micronoc could not prove that the lack of a written report from ESI was the proximate cause of damage. And regardless of any finding of breach, Micronoc did not prove any monetary damage with reasonable certainty.

## CONCLUSION

We conclude that the district court did not err in its award to ESI based on the plain meaning of the agreement and in finding that ESI was not required to produce a written report before payment.

AFFIRMED.